Case number 15-5237, United States of America v. Lester Barnes, oral argument not to exceed 15 minutes. Ms. Amy Copeland for the appellate. Thank you. May it please the court. My name is Amy Lee Copeland. I represent Lester Barnes. I have this morning reserved 10 minutes for rebuttal. So I'm going to get to the meat of what I think the most compelling issue here, and that's the improper admission of 404B evidence. It really was propensity evidence, and how do we know that? Well, we know how it came out at trial. You'll recall this case arose from three controlled buys on March 7th, March 13th, and March 20th of 2013. Jessica Holt, a confidential informant, purchased about 12 pills from Mr. Holt. The search warrant was executed on March 22nd, 2013. Prior to trial, the judge announced that he was going to allow in evidence of some jail calls from September 5th, 2013 between Lester Barnes and a woman named Susan. And the jail calls are to the effect of something like, give Fran four green and two blue ones, and there is some caution not to mix it up with blood pressure medicine in the earlier of the two calls, I believe. These come in on the basis of intent. This is what the finding is that they go to his intent, the September 2013 calls, to possess with intent to distribute pharmaceuticals on March 22nd of 2013. That is the basis for admission. The government does not mention these jail calls at all in its opening statements. They come in through an employee of the jail, an investigator of the Mellon County Sheriff's Department, testifies their inmate calls. They start off, this is an inmate call. So you know it's an inmate call. They're called the jail calls throughout. These are admitted. The judge gives a limiting instruction. I'm going to tell you, jury, you can only consider these on count four, possession with intent to distribute on March 22nd, 2013, only on the issue of intent. You can't consider this for any other purpose. Judge renews that same instruction at page 300 of the transcript and the final instructions. This is what the jury is told. Flash forward to what the government argues in its closing argument. The government doesn't mention this at all in its opening statement. So at page 259 of the transcript, the government outlines the count four evidence against my client, Mr. Barnes, and makes the statement at page 259, the only question for the jury in this case is whether or not the defendant intended to distribute. So in this category of how we know, according to the government, that Mr. Barnes intended to distribute, he talks about the controlled buys by Jessica Hold on three prior occasions. They talk about pill bottles being everywhere. They talk about money found on Mr. Barnes. But interestingly enough, the jail calls, which were admitted solely for the purpose of intent on this March 22nd, 2013, transaction, jail calls are never mentioned in the itemization of the evidence that the government has to show his intent. Instead, the government argues this at page 265 of the transcript. In fact, these are the last words of the government's first part of its closing arguments. Finally, the defendant's own words, to me, the most conclusive point. He was distributing drugs in September of 2013 when he was in jail, and he was distributing drugs in March of 2013. All he talked about on those jail calls was making sure that his customers got those drugs. The defendant's own words. They all point to Lester Barnes. They point that he is guilty of all six counts in the indictment. Thank you. That's how the government could- Was there an objection at that point? There was not, Your Honor. Defense trial counsel did not object, did not move for a mistrial. There was no objection. Instead, defense counsel gets up and says, listen, I think- defense counsel really focused in on the 924C count and said, I think the government's got a number of these facts wrong. You know, the gun wasn't found on the headboard. The SWAT commander was just incorrect. You know, the government is incorrect about this. Mostly focuses on the 924C. So the government gets back up, and in a closing argument that I think spans from 274 to 276 of the record, makes this statement at the bottom of page 275 to the top of 276. We have heard tons of testimony about how everybody was worried that the pills would be stolen. The jail calls, do you remember? He said, I'm glad you put them up. Put the stuff up. They were worried about the pills because pill addicts are desperate, and desperate people will do anything to get their pills. That is why you have to protect the pills and the drug money with firearms. The defendant did it. So, again, this does not go to intent in the possession with intent to distribute inquiry on March 22, 2013. To me, in response to the defense counsel's 924C argument, the government argues these jail calls show that he's guilty of possession of a firearm in furtherance of this. And to precipitate your question, Judge Gibbons, unfortunately, my colleague didn't object to that statement at closing argument either. Your Honor, based upon these statements, this purely was propensity evidence. My client was in jail. He's talking about drugs. This is months after the fact. These involve people that aren't even mentioned in the March transactions. We know it's propensity evidence because the government, when it details the evidence it has of intent in count four, mentions nothing about these calls and instead argues that these calls really go to all six counts of the indictment. The jury had twice been instructed that it could not consider the evidence for the purposes argued by the prosecutor. And I think there's some case law to the effect that jurors are presumed to have followed the court's instructions. I mean, I'm notóand IóI mean, while probably the court would have renewed its instruction again and perhaps stricken that argument, you know, with no objection, I'm not sure that the court was required to spontaneously instruct the jury again, and that's not argued. So I'm a little puzzled as toóI mean, I agree with you that the government did argue that the evidence pertained to elements and counts other than those which the district court had determined. But I'm not sure, without an objection, that at the end of the day, I'm not sure how you can benefit from that. The jury was twice instructed properly. I have kind of a compound answer to that. First of all, I will acknowledge the jury is instructed both in the preliminary instructions and in the final instructions. What you hear the attorneys say is not evidence. The jury was instructed they can consider this evidence about the jail calls only as to intent, as to the possession with intent to distribute charging count four. But there is case law, and the Richardson case says that basically a limiting instruction isn't a panacea if the limiting instruction tells the jury to consider the evidence for intent, and the evidence is simply not probative of intent. And that isó Now the argument is that evidence was not probative of intent? Your Honor, the government certainly didn't treat it that way at all. And there was alsoó Where, however, the government treated it, what's the logic of arguing it's not probative of intent? Your Honor, it occurred five and a half months after the actual possession with intent to distribute charge. It occurred well past that time. I understand that Sixth Circuit cases in the past have considered subsequent acts, but the cases cited in the government's brief tend to go to signature crimes, like bank robbery if you rob a bank in a cowboy hat every time, for instance. This had to do with people who were never mentioned in the first go-around in March. This had to do with apparently some unknown act involving two white pills to Jerrica and four to Fran that had nothing to do with the prior ones. Everything had gotten seized at the March 22nd. So to me, they are far apart in time, and they are simply not related. That's a really good argument, I think, but I'm concerned with how it fits here. It's a really good argument if the evidence that you're putting in does not haveó has to do with completely unrelated conduct, which was kind of where you seemed to be heading at the end. My concern is that this was, you know, under our Bell case, if it's part of the same drug distribution scheme or if it uses the same modus operandi as that charged crime. We don't evenóhere I'm struggling with what it means, since it's not just that it's the same method, it's that it is the very scheme. Isn't it offered to showóand wasn't there other evidence that this gentleman had been distributing to people, sometimes holding their actual medicine bottles and was distributing drugs to them? And isn't this part of that scheme that you have a call that says, here's how many pills you give to Teresa, and here's how many pills you give to Joan. Oh, she's really having an awful time. You need to get the white pill to her. Why is that not evidence of intent related to this very scheme as opposed to unrelated other conduct that you're trying to say once a drug dealer, always a drug dealer? And, Your Honor, Bell was certainly the basis of the district court's opinion for finding that this was all relevant. Your Honor, simply, just again, the temporal difference, the difference in the players in it, this was not an ongoing scheme. This was a possession with intent to distribute that occurred on a single date in March. This occurred well after it with different players, possibly different medications. It's not even really clear from the call exactly what's going on, what the two white ones are, what the four green ones and two blue ones are. There's a concern about blood pressure medicine indicated in that call. And it is justóit is difficult to argue that this was admitted for intent when the concern had been at the pretrial conference and the admission was, look, all the government is going to do is try to make Mr. Barnes to see like he's a bad guy. He's distributing drugs from jail. He's a terrible person. And that's exactly what happened. What is our standard of review? I understand it's an abuse of discretion. Does the judge make a clear error of fact or does he make an error of law? And that's how a judge abuses its discretion. Your Honor, my time is up and I'll address my other points in rebuttal. Thank you. Thank you. Cynthia Davidson for the United States. May it please the Court. This evidence was absolutelyóthe 404B evidence was absolutely properly admitted to show the defendant's intent. I will note that the defendant never brought up any claims of prosecutory misconduct in a closing statement in her original brief or at trial. She just argues them in her rebuttalóI mean, in her reply brief. And now she is asking basically that the government's word should be believed by the jury over what the judge actually instructed the court. And she mentions the fact that I did not bring it up in my opening and then I didn't reference it in the opening close, and these were because the evidence was overwhelming of the defendant's guilt. I simply neglected to mention it because there was so much evidence of this defendant's guilt. The 404B question, she also talks about the fact that it was several months subsequent. There is no rule that only prior bad acts are admissible. Subsequent bad acts are also admissible. In this case, it was extremely probative because it was the exact same scheme. He was distributing pills. He argued that he was simply holding people's pills. He put on various testimony from Jerica Holt that he was holding her pills. And, in fact, she arguedóI'm sorry, the defense attorney arguedóthat it wasn't the same actors. The Jerica who testified at trial was the same Jerica that the defendant was distributing pills to on the jail calls, the September jail calls. In the defendant's brief, she also argues that this was a huge difference in time. It was less than six months. And the courtóthis Sixth Circuit has held that there is no specific time with regard to the bad acts. It can be as long as four years. It can be as long as three years. And so the fact that it is subsequent to the original distribution is irrelevant with regard to what the time period is. Well, let's say it's all timely. Can you thenócan the government then use it simply for the purpose of arguing once a drug dealer, always a drug dealer? No, Your Honor. You have to do it on intent. We have to do it on intent. And what's your best evidence in this record to show that it was, in fact, doneóargued based on intent? It was used to show thatóit was to rebut his argument that he did not intend to distribute. When he was arrested, and it was in the record, that he said, I had theseóthere were only my own pills I occasionally held for other people, but I did not distribute. And so by his denial of that, it went solely to show his intent because he was distributing them in September. You would concede that theóI don't know, were you the one making the closing argument? Yes, Your Honor. You would concede that perhaps your choice of words was inartful in terms ofónot that you had to parrot the district court's instruction, but it's unclear from what Ms. Pogue read that Ms. Copeland readóI'm somewhere in some other caseóthat you're limiting your comments to intent. I would agree that it is unclear. And also the section of my closing argument thatóI believe I was referring to all the evidence. The defendant had a lot of words in this case because of the recorded transactions that he had with Ms. Holt. There were three recorded transactions. And then he made a statement to law enforcement also. And so often when I argued in his own words, I wasn't only referring to that jail call. In fact, that jail call I felt like was a fairly minor piece of evidence. I wish that I had not mentioned it in the rebuttal close when I was talking, but you notice that I didn't even reference the dealing. I referenced when he was talking about be sure to put the pills up. Well, theóI mean, arguably the jail calls were admissible not only to count four, but also to counts one, two, and three because the fact that they didn't charge possession with intent to distribute didn't make intent not an issue there. I mean, the elements of those offenses would require knowingly. Absolutely. And I didn't allege that just because the proof was overwhelming as to count one, two, and three because it was a recorded transaction which corroborated what Ms. Holt testified to on direct. And so as I said, I wish that I had not referenced it with regard to the 924C, but at trial, that was the entire trial. The defense attorney simply was arguing at every turn that the 924C should not be found. And in my rebuttal, I did refer to him in the jail call saying be sure to put the drugs up. And that was admitted foróthat was part of the jail call that was admitted during the trial. And if you look at the 924C, which we argued at length and is a big point of the brief, there is ample evidence to show the 924C count. If you look at the Mackey factors of the guns that was found, the defendant argues that he couldn't have possibly been able to reach that gun. However, the evidence in the record is all reasonable inferences are for the United States. And the Mackey requires that we were just required to show that it was strategically located so that it was available for use. And if you look at the Mackey factors in this case, was the gun loaded? Yes. What was the type of the gun? It was a handgun, which was easily concealable. Was it legal to possess? No. The defendant, Mr. Barnes, was a previously convicted felon. What type of drug dealing? The evidence showed that the defendant committed all the drug dealing from his bed, hand-to-hand buys. And the drugs were located very near to where two of the guns were, on the bed and in an open safe right next to the gun. And the time and circumstances, there was also the testimony of the officer that when he came in for the search warrant, he witnessed Mr. Barnes reaching for that gun. There was absolutely no evidence in the record that the defendant was physically incapable of getting that gun. The fact that there was a photograph of oxygen and that he attended trial in a wheelchair simply doesn't make that a disputed issue with regard to whether or not he could reach that firearm. And then finally, with the third argument which the defendant raises in her brief regarding the sentencing, I believe that our brief completely disposes of that, because the fact is that the sentencing guidelines do not explicitly define a suspended sentence. But this court has held that a suspended sentence is a sentence which is suspended by the court, not a government agency. And I think that completely disposes the defendant's argument in that case. And I did, when I read the defendant's reply brief, I did search for, just in the Sixth Circuit, I could not find a case that was subsequent 404B evidence longer than the ones that I cited for this court. But I did an all feds search and there are many cases throughout the districts, other circuits I'm sorry, that have subsequent evidence of longer than six months. And I would direct the court, and I did not cite this in my brief, to United States v. Rutowski. And it's a Second Circuit case, 506F3-170. And it's a 2007 case, again from the Second Circuit. And in this case, the Second Circuit held that subsequent evidence four years after the event was proper to show intent. And that was a securities fraud case. And so that evidence was issued and the Second Circuit found no problem with that. If there are not any questions, Your Honor, I would argue and the United States admits that there was no error in this record and we ask you to affirm the district court's opinion. Thank you. Your Honor, the government characterizes the jail calls today as a fairly minor piece of evidence. But in October of 2014, characterized this as perhaps the most conclusive point of evidence that they did. And again, talked about how protecting the pills and drug money with firearms, which goes directly to the 924C charge, which is the other ground of major battle in my brief. Here, Mackey talks about is the gun readily accessible for use in protection, defense, all sorts of other things. The unequivocal testimony here is that the gun was actually located under a waterbed mattress. The agents all testified you have to pick it up or you have to lift it up or it was underneath. So it wasn't as Bowen testified, the SWAT commander, that it was between the edge, the wooden edge and the mattress itself as he implied. These strapping young agents are actually saying we actually had to pick it up. We had to lift it up and we found the gun there. One was toward the top of the bed. It was loaded. The one at the bottom of the bed was not loaded. My point is that this gun was not readily accessible, especially to this defendant. He was a younger man. He was 61 years old but had terrible health considerations, pins in his neck, two stunts in his heart. A number of days he didn't even get out of the waterbed. His family had thought at several points in time he would die. There was an oxygen tank visible in the pictures next to the waterbed. I think he used an oxygen tank at trial. And he appeared in a wheelchair at trial. I get the point that Jessica Holt, the confidential informant, had never seen him in a wheelchair previously to this time. But he did have a wheelchair trial and the oxygen tank is there. Your Honor, the other testimony in this case about gun use is simply that Mr. Barnes had a gun around. Jessica Holt, the CI, apparently didn't feel threatened by this. She left her child at the house. She would hide the guns when her kid was there. But there was no knitting up of this gun with any sort of drug transaction between the confidential informant and Mr. Barnes. What kind of guns were they? Your Honor, there were all sorts. There was a revolver at the top of the bed. It was loaded, five rounds, two of which had been shot. At the bottom of the bed was... I'm not talking hunting. There were plenty of hunting rifles there, too. There were plenty of... But the one near the head of the bed was... Was a loaded revolver, correct. It was not easily accessible to my client, is, again, my contention, especially when you have strapping agents testifying about having to actually pick up the waterbed mattress. But, you know, yes, it was there. It was under the mattress at the head of the bed. There was one under the mattress at the bottom of the bed that was unloaded. But... With a clip next to it? The clip was next to it. It was stuck in a holder, and I think the gun was next to the holder or the gun was in the holder and the clip was in the holder. But it was not. You'd have to shove it in. But, John, there was just nothing from the three transactions that he had with Jessica Hunt that tied up any sort of gun use, even remotely, with those drug transactions. And possession and furtherance is possibly a more stringent standard than use or carry bail. It's possession, though, not use. It is possession, correct, and furtherance of. And the furtherance of is the part that I think is the difficult burden for the government to show. Simply having a gun under your waterbed mattress when police bust in on March 22nd isn't enough to show possession and furtherance of. The Bailey case, which is footnoted, I think, in Mackey, talks a bit about that, how drug agent testimony that there was a gun in a car just isn't enough. The proximity alone isn't. You have to sort of knit it together. Near drugs and cash for the drugs is not sufficient? Your Honor, it simply was not readily accessible. And with the culture. I'm asking you about some of the other things that you have to look to. The drugs were right there, correct? The drugs, there were drugs found in a Crown Royal bag. $1,700 of cash. That is correct, including $104 in marked bills. It was illegal for him to have the revolver. You are correct, Your Honor. All of those are things that are part of the balancing to determine if it was readily accessible in furtherance, aren't they? That is more of whether it is in furtherance of as opposed to readily accessible. I think that that is actually its own Mackey factor. Was it strategically located so that it is quickly and easily available for use? But Mackey case also talks about the circumstances under which it was found and the types of drug activity. Those are the fifth and sixth Mackey factors. Here, it seemed from the transcript, it seems apparent that Mr. Barnes dealt with friends, if you will, people that he knew. Jessica Holt had been there every day for a 6 to 12-month period prior to that, left her child at the house. In fact, after her arrest at the Dollar Tree parking lot, Mr. Barnes' family took care of the baby. And finally, the circumstances under which it was found. There is no active dealing going on that day. It was shoved under a waterbed mattress. My time is up. Thank you. Have a good afternoon. Thank you very much. The case is submitted. There being no further cases, volume may adjourn.